UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MILICA CUCKIC,
                  Plaintiff,

-v-

UR MENDOZA JADDOU,
                  Defendant.

21-CV-8395 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    This is a case about whether United States immigration authorities acted in an arbitrary and capricious manner, in violation of the Administrative Procedure Act ("APA"), when they denied Ms. Milica Cuckic's petition for a special kind of "extraordinary ability" visa by failing to rationally apply the laws and regulations governing such a special visa application. Both Plaintiff and Defendant cross-move for summary judgment. For the reasons that follow, Defendant's motion for summary judgment is granted and Plaintiff's motion is denied.

**I.    Background**

    **A.    Regulatory Background**

    Section 1153(b)(1)(A) (the "Extraordinary Ability Statute" or, simply, the "Statute") is a statutory provision that applies to certain "[a]liens with extraordinary ability" in "the sciences, arts, education, business, or athletics," as "demonstrated by sustained national or international acclaim" and "whose achievements have been recognized in the field through extensive documentation." 8 U.S.C. § 1153(b)(1)(A)(i). If an alien meets this threshold, to apply for status under the Extraordinary Ability Statute, that alien must also show, first, that they seek to come into the U.S. "to continue to work in the area of [their] extraordinary ability," *id.*

1

§ 1153(b)(1)(ii), and second, that their "entry" would "substantially benefit prospectively the United States." *Id.* § 1153(b)(1)(iii).

All things being equal, a resident alien might prefer applying for a visa under this provision than most others in the Immigration and Nationality Act for at least two reasons.  First, to obtain a visa under the Extraordinary Ability Statute, an alien can file a petition herself, while under other provisions of the INA, only an alien's employer can do so.  *See* 8 C.F.R. § 204.5(h)(1); *Arbor Home, LLC v. Mayorkas*, 604 F. Supp. 3d 878, 882–83 (N.D. Cal. 2022).  Second, EB-1 status also lacks the (sometimes onerous) requirements that an alien produce documentation that they have either a pending offer of employment from an American employer or a certain form of labor certification, issued only by the Department of Labor ("DOL").  *See* 8 C.F.R. § 204.5(h)(5); *Arbor Home*, 604 F. Supp. At 883.

United States Citizenship and Immigration Services ("USCIS"), the agency charged with implementing the Statute, has issued regulations that interpret the statutory language strictly such that sufficient extraordinary ability is only "a level of expertise indicating that the individual is one of that small percentage who have risen to the field of the endeavor," 8 C.F.R. § 204.5(h)(2), and the agency has long taken the view that Congress meant to set uniquely high standards for an applicant to merit an extraordinary ability visa.  *See* 56 Fed. Reg. 60897, 69898–99 (Nov. 29, 1991).

To meet this restrictive definition of "extraordinary ability," a petitioner must establish, via submission of evidence, that the petitioner "has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise."  8 C.F.R.

§ 204.5(h)(3).  Regulations promulgated by USCIS require that when faced with an extraordinary ability visa application, USCIS applies a two-step analysis.[1]

The first step of extraordinary ability analysis can be satisfied in only two ways.  First, a petition might provide documentation of *one* major, internationally recognized achievement award having been bestowed on the applicant, or else they must meet at least *three* of the following *ten* criteria:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
>
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business- related contributions of major significance in the field;
>
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
>
> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

---

[1] USCIS, like any agency, is bound by judicial interpretation of the plain meaning of its regulations, and it lacks the authority to "unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 C.F.R. § 204.5." *Kazarian v. USCIS*, 596 F.3d 1115, 1121 (9th Cir. 2010) (citing *Love Korean Church v. Chertoff*, 549 F.3d 749, 758 (9th Cir. 2008)).

>  (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
>
>  (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
>
>  (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. §§ 204.5(h)(3)(i)–(x). If USCIS finds a petition to satisfy the above, then the agency moves on to step two, a totality of the circumstances inquiry, to make its final determination of a petition's merits. *See Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 539 (S.D.N.Y. 2012).

At all times, a petitioner bears the burden of proof to establish they are eligible for the requested visa benefit by a preponderance of the evidence. Federal courts have generally described this two-step flowchart of regulatory criteria as "extremely restrictive," *Kazarian v. USCIS*, 596 F.3d 1115, 1120 (9th Cir. 2010) (quoting *Lee v. Ziglar*, 237 F. Supp. 2d 914, 918 (N.D. Ill. 2002)), and noted that these barriers to obtaining EB-1 status are precisely why this type of visa is "colloquially dubbed as the 'Einstein' or 'genius' visa." *Noroozi*, 905 F. Supp. 2d at 539.

### B.     Factual Background

Milica Cuckic ("Plaintiff" or "Ms. Cuckic") is a citizen of Serbia who, for some years, has been admitted to and residing legally in the United States on a temporary basis classified as an O-1 nonimmigrant temporary worker. (*See* ECF No. 13 ("CAR" or "Central Administrative Record") at 176.) On April 9, 2021, Ms. Cuckic filed a Form I-140, Immigrant Petition for Alien Worker (the "Petition"), with USCIS at its Texas Service Center. (CAR at 178.) That Petition, which forms the basis of the matter before the Court, specifically sought EB-1 status for Ms. Cuckic as an "Audio Fingerprinting Specialist." (*Id.*) The Petition was filed pursuant to 8

4

U.S.C. § 1153(b)(1)(A), the special statutory provision discussed above, *see supra* I.A, authorizing first preference immigrant visas to be allocated to foreign nationals with "extraordinary ability" in the science, arts, business, or athletics. (*Id.*)

On April 15, 2021, USCIS issued a Request for Evidence ("RFE") in response to the Petition, to which Ms. Cuckic furnished responses on July 1, 2021. (*See* CAR at 123 – 63.) One week later, on July 7, USCIS denied the Petition. (*See* CAR at 113 – 22.) In response, Ms. Cuckic filed the first iteration of her Complaint with this Court challenging USCIS's denial of the Petition as "arbitrary and capricious" in violation of the Administrative Procedure Act, 28 U.S.C. § 706(2)(A), and seeking relief in the form of judicial vacatur of the denial and an order directing USCIS to approve the Petition. (*See* ECF No. 1 ¶¶ 13, 15 – 16; *see also* ECF No. 1 ¶¶ (a), (c).) However, before it answered her Complaint, USCIS internally reviewed its own decision and decided to reopen the adjudication. (*See* ECF No. 6.) To give effect to the reopening, USCIS furnished Ms. Cuckic with a second REF on December 7, 2021 (*see* CAR at 19 – 17), to which Ms. Cuckic responded on December 27, 2021. (*See* CAR at 18, 28 – 104.)

On February 4, 2022, USCIS for the second time denied Ms. Cuckic's Petition, finding that she had failed to satisfy at least three of the ten regulatory criteria under the first step of USCIS's extraordinary ability analysis. (CAR at 1 – 9.) In her Petition, Ms. Cuckic decided not to submit evidence that she had a sufficiently grand and well-known "one time achievement," and she instead sought to pass step one by satisfying three of the enumerated regulatory criteria described in the preceding subsection. Ms. Cuckic, moreover, submitted evidence to be considered under five of the ten aforementioned regulatory criteria, needing to establish at least three of them — criteria (ii) (membership in associations that require "outstanding achievements" to admit members), criteria (iii) (publication in a professional or major trade

5

publication relating to her work in her field), criteria (iv) (participation as a judge of the works of others in her field), criteria (vii) (the display of Ms. Cuckic's work in her field at art exhibitions or similar showcases), and, most relevant to the analysis below, criteria (viii) (performance by Ms. Cuckic of a "leading or critical" role for organizations, establishments, or other institutions that have an extant distinguished reputation).  (*See id.*)

In February 2022, USCIS, determined that Ms. Cuckic's submissions reasonably satisfied, at most, only criteria (iii) (publication) and criteria (iv) (judging others); accordingly, USCIS found that Ms. Cuckic failed to meet her evidentiary burden at step one to satisfy at least three of the enumerated criteria and again denied the Petition.  (CAR at 4 – 8.)

### C.     Procedural Background

As noted above, Ms. Cuckic initiated this case and filed her first Complaint before USCIS made the decision to reopen her Petition.  After USCIS had denied the application for a second time, Ms. Cuckic filed an Amended Complaint on February 8 arguing, solely, that the denial of her application was arbitrary and capricious in violation of the APA and seeking a writ of mandamus ordering the USCIS to accept the Petition.  (*See* ECF No. 8 ("AC") ¶¶ 18 – 23.) The Government answered, substantially denying all allegations, in February 2022 and filed the Certified Administrative Record ("CAR") in April 2022.  (ECF No. 8; *see generally* CAR.)  Ms. Cuckic first moved for summary judgment as to all aspects of the APA claim (*see generally* ECF No. 16 ("Plaintiff's Brief" or "Pl. Br.")), and, in response, the Government filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment.  (*See generally* ECF No. 18 ("Government's Brief" or "Govt. Br.").)  Ms. Cuckic did not file any response or reply to the Government's brief, which remains the last substantive filing in this matter with this Court.  *See* FED. R. CIV. P. 56(c).

## II.     Legal Standards

### A.     Summary Judgment

To prevail at summary judgment, nonmovants must raise a genuine issue of material fact. FED. R. CIV. P. 56(c). Raising such an issue requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to prevail at summary judgment, the movant need not affirmatively produce evidence; it can, in some cases, prevail if, after discovery, "there is no genuine issue as to any material fact" such that a reasonable juror could find for the opposition. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

APA challenges to agency action, like the present one, generally concern only questions of law and, therefore, are particularly appropriate to resolution by motions under Rule 56. That is so because "[w]here, as here, a party seeks judicial review of agency action, summary judgment is appropriate, since 'whether an agency action is supported by the administrative record and consistent with the APA standard of review' is decided 'as a matter of law.'" *Residents of Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011)).

### B.     Arbitrary and Capricious Review

Federal courts must apply a highly deferential standard in reviewing whether a challenged governmental action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this highly deferential standard of review, a district court may deem an agency's action arbitrary and capricious in violation of the APA only "if the agency has relied on factors which Congress has not intended it to consider,

7

entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

As the Second Circuit has understand this deferential standard, it is impermissible for a court to "engage in an independent evaluation of the cold record," *Guam v. Gonzales*, 432 F.3d 391, 394 – 94 (2d Cir. 2005), nor may a court use an APA case to "substitute its judgment for that of the agency." *Nat. Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

A court must, in other words, grant summary judgment to the Government unless it determines by a preponderance of the evidence that the agency has *not* "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a 'rational connection between the facts found and the choice made.'" *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

C.   **Immigration**

Strict adherence to this highly deferential standard of "[j]udicial deference to the Executive Branch is especially appropriate in the immigration context." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).   The scope of "judicial review of a denial of a visa petition is narrowly circumscribed and limited to whether the decision . . . was arbitrary, capricious or an abuse of discretion." *Fedin Bros. Co. Ltd. v. Sava*, 724 F. Supp. 1103, 1105 (E.D.N.Y. 1989 (citing 5 U.S.C. § 706(2)(A); *Pancho Villa Rest., Inc. v. U.S. Dep't Lab.*, 796 F.2d 596, 597 (2d Cir. 1986)).

**III.    Discussion**

The above-articulated standards enshrine a highly deferential standard when the parties, as here, cross-move for summary judgment in an APA challenge to agency action like the decision whether to grant a visa.  For this court to take the unusual step of reversing the agency "would require that this Court find that no reasonable fact finder could have come to USCIS's erroneous conclusion" with regard to Ms. Cuckic's Petition.  *Hristrov v. Roark*, 2011 WL 4711885, at *3 (E.D.N.Y. Sept. 30, 2011).

The facts, posture, and strategic choices of the litigants in this case limit the scope of judicial review even more.  Here, the parties agree that, first, Ms. Cuckic's Petition did not attempt to produce evidence of a single, major award recognizing Ms. Cuckic's extraordinary ability in the domain of audio fingerprinting.  The parties agree on the legal requirement — that because of this fork in the road, Ms. Cuckic needed to satisfy three of the ten enumerated regulatory criteria above.  And the parties agree that Ms. Cuckic has satisfied two of those criteria, criterion (iii) (publication) and criterion (iv) (judging others).  *See supra* I.C.

Moreover, although Ms. Cuckic's initial application raised arguments and purported to produce evidence establishing that she met five or more of the regulatory criteria, she argues only that she meets one additional criterion before this Court[2] — criterion (viii), which places the burden on the alien to adduce sufficient "[e]vidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation." *Id.* Importantly, precedent and plain meaning strongly suggest — and Ms. Cuckic does not dispute

---

[2] The Government here has briefed procedural res judicata arguments with respect to certain hypotheticals that Ms. Cuckic might seek to raise.  However, these arguments were not raised by Ms. Cuckic in either the Complaint or Amended Complaint and so the Court need not and does not address them.

— that the criteria's use of the plural ("organization*s* or establishment*s*") requires evidence of at least two such leading positions.

The only issue properly before this Court, then, is whether USCIS acted in a manner that is arbitrary and capricious within the meaning of Section 706 of the APA in denying Ms. Cuckic's application for an extraordinary ability visa by rejecting her evidence and arguments that she "performed in a leading or critical role for organizations or establishments that have a distinguished reputation" within the meaning of regulatory criterion (viii).

The Court concludes that USCIS did not engage in arbitrary and capricious agency action in violation of Section 706 in denying Ms. Cuckic's application for an extraordinary ability visa. First, Ms. Cuckic's briefing before this Court assumes that she applied for the EB-1 visa on the basis of generic success in the music recording industry, but that is false; Ms. Cuckic applied for the visa only on the basis of her unique abilities as a "specialist" in the domain of "audio-fingerprinting." (CAR at 218.)  Therefore, most of the REFs and other forms of evidence, which have nothing to do with her specific fingerprinting work, are a mismatch and irrelevant to this case.

One element of criterion (xiii) is that an applicant must show that the places at which they were employed were sufficiently distinguished and/or established.  Finding Ms. Cuckic's initial production wanting on this issue, the agency sent Ms. Cuckic an REF specifying that it needed additional information about her two employers (Wind-Up and BMAT) to "assist in determining that [they] have a distinguished reputation" and recommended that Ms. Cuckic "submit additional documentation of [their] eminence, distinction, or excellence." (CAR at 26.)  Ms. Cuckic produced no such evidence.  USCIS rules at the time, still in effect today, reject as insufficient evidence solely gleaned from promotional material that an organization creates about

itself. All the evidence that Cuckic produced was written by BMAT, mostly from its website, and Ms. Cuckic does not dispute that today; on that basis, USCIS reasonably found that Ms. Cuckic failed to meet her burden of establishing that BMAT had a sufficiently high reputation to meet the criteria. (CAR 8 (citing *Visuncaia v. Beers*, 4 F. Supp. 32 126, 135 (D.D.C. 2013).)

### IV. Conclusion

For the foregoing reasons, the Court concludes that the Government agency action in this case was not arbitrary and capricious or otherwise unlawful. Accordingly, Defendant's motion for summary judgment is GRANTED, and Ms. Cuckic's motion for summary judgment is DENIED.

The Clerk of Court is directed to close the motions at ECF Numbers 16 and 18 and to close this case.

SO ORDERED.

Dated: March 21, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge